IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-95-0202 |
| | * | |
| KITTRELL DECATOR | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Kittrell Decator is a federal prisoner who is serving a 633-month sentence for convictions stemming from his participation in several armed bank robberies in the early 1990s. To date, Decator has served over 25 years of his sentence. Now pending is Decator's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute). (ECF 339). The government opposes the motion, (ECF 347), and Decator has replied, (ECF 352). For the reasons explained below, the motion will be granted and Decator's sentence reduced to time served.

**BACKGROUND**

Between September 1993 and June 1994, Decator and several co-conspirators participated in one attempted and two completed bank robberies. *See United States v. Decator*, 112 F.3d 511, 1997 WL 225988 at *1 (4th Cir. 1997) (unpub.). Although guns were involved, no one was physically injured during the commission of these crimes.

Decator, then in his early twenties, had no criminal history prior to his arrest in June 1994. In July 1994, Decator was charged with one count of conspiracy to commit bank robbery; two counts of armed bank robbery; one count of attempted armed bank robbery; and three counts of using and carrying a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). *Decator*, 1997 WL 225988 at *2. Decator was convicted by a jury on all counts.

1

*Id.*[1] He received a sentence of 633 months' imprisonment, the vast majority of which was based on mandatory, consecutive sentences for the three § 924(c) counts.[2] Decator has now served over 25 years of his sentence and has a projected release date in 2039 or 2040.[3]

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-291, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

In September 2019, Decator submitted a written request to the warden of FCI Fairton, asking him to file a motion for a reduction of Decator's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The request was denied. In December 2019, Decator filed the instant motion. The parties agree that the motion is properly before the court; the only issues are (1) whether "extraordinary and compelling reasons" warrant reduction of Decator's sentence and (2) whether

---

[1] While Decator was charged with all seven counts in the same indictment, the two counts related to the attempted robbery were severed and tried separately.
[2] Decator was also sentenced to an additional six months for contempt based on an outburst in court.
[3] Decator states that his projected release date is in May 2040, while the government states that the projected release date is in June 2039.

2

the § 3553(a) factors weigh in favor of such a reduction.

## DISCUSSION

I.  **"Extraordinary and compelling reasons"**

Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D). According to the government, because Decator does not move for release based on health, age, or caregiver-related reasons, he necessarily seeks release under U.S.S.G. §1B1.13 cmt. n.1(D) (the "catch-all provision"). The government argues that because Decator's "other reasons" do not meet the BOP criteria as defined in Program Statement 5050.50,[4] he is not eligible for release.

The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act. It indicates that § 3582(c)(1)(A)(i) review is available only upon motion of the BOP, which is no longer correct. *See* U.S.S.G. §1B1.13. Indeed, Congress amended § 3582 with the explicit goal of "increasing the use and transparency of compassionate release," *see* First Step Act § 603(b), presumably because before the amendment—when access to the courts for §

---

[4] Program Statement 5050.50 is titled "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), and sets forth BOP regulations and implementing information relating to compassionate release.

3

3582(c)(1)(A)(i) review depended on a BOP motion—the compassionate release statute was under-utilized. *See United States v. Beck*, --- F. Supp. 3d ----, 2019 WL 2716505, at *13 (M.D.N.C. 2019) (the First Step Act amendments to § 3582(c)(1)(A)(i) "establish[] that Congress wants courts to take a *de novo* look at compassionate release motions"). Many district courts have thus reasoned that the catch-all provision's limitation of "other" "extraordinary and compelling reasons" to those defined by the BOP is similarly inconsistent with the First Step Act. *See United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *8 & n.18 (E.D. Va. Mar. 16, 2020) (collecting cases). As the *Redd* court explained,

> Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.

*Id*. at *7; *see also United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]ependence on the BOP to determine the existence of an extraordinary and compelling reason . . . is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act."). The court agrees with this reasoning. While Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are "extraordinary and compelling reasons" to reduce a sentence. *See Redd*, 2020 WL 1248493 at *4; *Young*, 2020 WL 1047815, at *6 (collecting cases).[5]

Decator's proffered "extraordinary and compelling reasons" for a sentence reduction

---

[5] The existence of conflicting opinions on this issue does not change the court's conclusion that it has independent discretion to identify "extraordinary and compelling reasons" to reduce a sentence. *See United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) ("Other courts seem to treat the current Policy Statement as binding even after the First Step Act." (collecting cases)).

focus on the fact that the bulk of his sentence was based on "stacked" § 924(c) charges. At the time of Decator's sentencing, if multiple § 924(c) counts were charged in the same indictment, the first § 924(c) conviction carried a mandatory, five-year consecutive sentence, and each additional § 924(c) conviction added another 20 years.[6] This was because under the original version of the statute, a § 924(c) conviction was considered "second or subsequent"—thus triggering the 20-year penalty—even if the *first* § 924(c) conviction was obtained in that same case. *See Deal v. United States*, 508 U.S. 129, 132–33 & n.1 (1993). As Decator was convicted on three § 924(c) counts, the sentencing judge was required to tack 45 years onto Decator's sentence.

As part of the First Step Act, Congress amended § 924(c) to eliminate the practice of "stacking" sentences in this way. *See* First Step Act § 403(a). The phrase "second or subsequent conviction" was replaced with "violation of this subsection that occurs *after a prior conviction under this subsection has become final*." *See id.* (emphasis added). Under the amended statute, a defendant like Decator—no criminal history, but convicted of multiple § 924(c) counts arising from a single indictment—is no longer subject to the additional 20- or 25-year penalty. Accordingly, if Decator were sentenced today, his three § 924(c) convictions would result in a consecutive sentence of 15 rather than 45 years.

Multiple district courts have reasoned that "the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)." *See United States v. Owens*, No. 97-CR-2546-CAB, ECF 93 at 4 (S.D. Cal. Mar. 20, 2020) (collecting cases). The court agrees with this reasoning. The fact that Decator, if sentenced today

---

[6] In 1998, Congress amended § 924(c) to increase the mandatory minimum for a "second or subsequent" § 924(c) conviction from 20 years to 25 years. *See* Pub. L. 105-386, § 1(a), Nov. 13, 1998, 112 Stat. 3469.

for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an "extraordinary and compelling" reason justifying potential sentence reduction under § 3582(c)(1)(A)(i).

The government argues that the changes to § 924(c) cannot form the basis for sentence reduction under § 3582(c)(1)(A)(i), as the First Step Act did not make the amendments to § 924(c) retroactive. The court is not persuaded. The fact that Decator's sentence will not be reduced pursuant to a retroactive application of the amended § 924(c) does not prohibit the court from considering this legislative change in deciding whether to reduce Decator's sentence. As one district court explained, "[i]t is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis." *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) (emphasis in original); *accord United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *1, 4 (D. Neb. Nov. 14, 2019); *see also Redd*, 2020 WL 1248493, at *9. Moreover, granting compassionate release on the basis of the amended § 924(c) is not obviously contrary to congressional intent. The portion of the First Step Act amending § 924(c) is titled "Clarification of Section 924(c) of Title 18, United States Code," *see* First Step Act § 403, suggesting that Congress never intended the statute to result in a "stacked" sentence like Decator's. Accordingly, pursuant to its independent discretion, the court finds that Decatur's continued incarceration under a sentencing scheme that has since been substantially amended is a permissible "extraordinary and compelling" reason to consider him for compassionate release.

## II. Section 3553(a) factors

The compassionate release statute provides that, before reducing a defendant's sentence

for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court considers (1) Decator's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See Redd*, 2020 WL 1248493, at *8 (citing 18 U.S.C. § 3553(a)(1)–(6)).

With respect to Decator's personal history and characteristics, the court notes that Decator was relatively young—between 22 and 23 years old—and had no criminal record when he committed the crimes of conviction. But the court also places great weight on Decator's post-sentencing conduct, which "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United* States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). While incarcerated, Decator has participated in extensive educational and rehabilitative programming; he has participated in over 1,500 hours of programming and has completed more than 70 courses.[7] He has a minimal, non-violent disciplinary record. Decator has maintained close relationships with members of his family, including his mother, sister, brother-in-law, and three nieces. If released, Decator plans to live with his mother in Baltimore, Maryland. Decator has also forged positive relationships with members of the community who have expressed willingness to help Decator transition to life outside prison. Attached to

---

[7] In arguing that the § 3553(a) factors—including the need for rehabilitative programming—weigh against Decator's release, the government argues that "immediate release would effectively eliminate much, if not all, of the programs and release planning provided by the Bureau of Prisons in the final years of an inmate's sentence, including drug education and placement in a halfway house." (Opp'n at 22). The government does not explain, however, why this additional programming would be necessary for Decator's rehabilitation, as they do not contest his lengthy record of educational and rehabilitative programming, nor do they assert that Decator has a particular need for drug education.

Decator's motion are three letters: one written by the leader of a counseling group who plans to accept Decator into a training program, and two written by business owners willing to offer Decator immediate employment upon his release. (*See* ECF 339-2).[8] Additionally, two members of the clergy are ready to welcome Decator into their congregations. From all accounts, Decator is a much different man today than he was when he participated in the armed bank robberies. Moreover, Decator appears to be well equipped to handle the potential challenges of reentry.

The court acknowledges that Decator's offenses were indeed serious. While no one was physically injured, Decator's actions caused psychological pain to his victims. (*See* Opp'n at 17–18 (excerpts from victim impact statements)). The court believes that the 25-plus years in prison Decator has already served reflect the seriousness of his conduct and demonstrate the need for deterrence, public safety, and respect for the law. But Decator's continued incarceration would be both disproportionate to the seriousness of his offense and to what Congress now deems appropriate for this kind of conduct. Indeed, Decator's 633-month sentence is roughly twice as long as federal sentences imposed today for murder.[9] And as the court explained above, the changes to § 924(c) mean that if sentenced today, Decator would likely receive at least 30 fewer years on his sentence.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Decator's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Combined with the "extraordinary and compelling" fact that most of Decator's

---

[8] The court acknowledges, however, that immediate employment might not be possible due to the current COVID-19 health crisis.
[9] According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months. *Redd*, 2020 WL 1248493, at *9 n.20 (citing United States Sentencing Commission, *Statistical Information Packet*, *Fiscal Year 2018*, *Fourth Circuit,* available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf).

lengthy sentence resulted from the now-eliminated practice of "stacking" § 924(c) sentences, the court concludes that Decator is entitled to compassionate release.

## CONCLUSION

For the forgoing reasons, Decator's motion for sentence reduction will be granted and his sentence will be reduced to time served. The terms and conditions of supervised release to which Decator was originally sentenced will remain in place, with the added condition that for the first fourteen days, Decator will remain at home except for medical or other emergencies. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows.

| | |
|---|---|
|     4/6/20     |     /S/     |
| Date | Catherine C. Blake |
| | United States District Judge |